UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TIMOTHY SKRYNNIKOV, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 11-0609 (GK) |
| | : | |
| FEDERAL NATIONAL MORTGAGE | : | |
| ASSOCIATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

Plaintiff Timothy Skrynnikov ("Plaintiff" or "Skrynnikov") brings this action against Defendant Federal National Mortgage Association ("Defendant" or "Fannie Mae") alleging retaliation under the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., and interference with his rights under both the Federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and the related District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code § 32-501 et seq.

This matter is before the Court on Defendant's Motion to Dismiss and Its Motion to Compel Arbitration [Dkt. No. 26]. Upon consideration of the Motion, Opposition [Dkt. No. 29], and Reply [Dkt. No. 30], and the entire record herein, and for the reasons set forth below, the motion to compel arbitration is **granted**.

I.   **BACKGROUND**[1]

Fannie Mae is a government-sponsored corporation chartered by Congress, with its headquarters in the District of Columbia. SAC § 5. Skrynnikov was employed by Fannie Mae as a Senior Financial Analyst from October 9, 2007 until November 13, 2009, when his employment was terminated. SAC ¶¶ 6, 38. Skrynnikov alleges that Fannie Mae eliminated his position in retaliation for his investigation into and disclosure of purported falsehoods in executive compensation data that Fannie Mae reported to the United States Senate Committee on Finance in March 2009. SAC ¶¶ 11-17, 38-42. Skrynnikov also alleges that the elimination of his position interfered with his rights under the FMLA and DCFMLA because it came at the conclusion of an approved medical leave of absence. Id. ¶¶ 26-38, 43-50.

When Skrynnikov applied for his job in October 2007, he signed an application form acknowledging that "as a condition of employment, all Fannie Mae employees must agree to be bound by Fannie Mae's Dispute Resolution Policy, which requires that certain employment-related claims be submitted to arbitration before a suit can be brought on them in court." Def.'s Mem. P. & A., Ex. 1 ("Employment Application") at 4 [Dkt. No. 26-1].

---

[1] The facts set forth herein are taken from the Second Amended Complaint ("SAC")[Dkt. No. 23] and the undisputed facts set forth in the parties' briefs and exhibits.

Similarly, when Skrynnikov signed and accepted Fannie Mae's offer of employment, he did so subject to the understanding that Fannie Mae's Dispute Resolution Policy required him "to submit certain employment-related claims to the mandatory arbitration process for final resolution prior to filing these claims in a court of law." Def.'s Mem. P. & A., Ex. 2 ("Offer Letter") [Dkt. No. 26-2].

The Dispute Resolution Policy, a copy of which accompanied Fannie Mae's Offer Letter, provides that a Fannie Mae employee is required to arbitrate "all claims . . . against Fannie Mae . . . involving a legally-protected right, that directly or indirectly relate to his or her employment or the termination of that employment[.]" Def.'s Mem. P. & A., Ex. 3 ("Dispute Resolution Policy" or "Policy") § 2 [Dkt. No. 26-3]. The Policy elaborates that the claims to which it applies may "involv[e] rights protected by any federal, state, or other governmental constitution [sic], statute, ordinance, regulation, or common law." Id. The Policy also states that "[t]he arbitrator will resolve all disputes over the interpretation and applicability of the Policy, and over the arbitrability of all matters presented under it." Id. § 16.

On March 23, 2011, Skrynnikov filed this case against Fannie Mae asserting a qui tam claim under the FCA on behalf of

the United States, as well as various employment-related claims
on his own behalf. [Dkt. No. 1]. On March 27, 2012,
Skrynnikov's qui tam claim was dismissed on motion of the
Government pursuant to 31 U.S.C. § 3730(c)(2)(A). [Dkt. Nos.
17, 18]. In his Second Amended Complaint [Dkt. No. 23],
Skrynnikov brings claims solely on his own behalf for
retaliation under the FCA, and for interference with his rights
under the FMLA and DCFMLA. SAC §§ 39-50. It is undisputed that
Skrynnikov did not submit these claims to arbitration before
commencing this action.

On November 6, 2012, Fannie Mae moved to dismiss the FMLA
and DCFMLA claims pursuant to Rule 12(b)(6) of the Federal Rules
of Civil Procedure, and to compel arbitration of the FCA claim.
[Dkt. Nos. 26, 27-1]. Fannie Mae also requested that if the
Court did not dismiss the FMLA and DCFMLA claims, it compel
arbitration as to those claims as well. On January 7, 2013,
Skrynnikov filed his Opposition to Fannie Mae's Motion [Dkt. No.
29], and on January 14, 2013, Fannie Mae filed its Reply [Dkt.
No. 30].

## II.  STANDARD OF REVIEW[2]

A motion to compel arbitration is effectively "a request for summary disposition of the issue of whether or not there ha[s] been a meeting of the minds on the agreement to arbitrate[,]" and therefore such a motion is properly reviewed under the summary judgment standard of Rule 56(c) of the Federal Rules of Civil Procedure. Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc., 531 F.3d 863, 865 (D.C. Cir. 2008) (citations and quotation marks omitted).

"Under this standard, the party seeking to compel arbitration must first present 'evidence sufficient to demonstrate an enforceable agreement to arbitrate.'" Fox v. Computer World Servs. Corp., No. 12-0374 (ABJ), 2013 WL 385610, at *3 (D.D.C. Feb. 1, 2013) (quoting Hill v. Wackenhut Servs. Int'l., 865 F. Supp. 2d 84, 89 (D.D.C. June 7, 2012)).  The burden then shifts to the opposing party "to show that there is a genuine issue of material fact as to the making of the agreement[]" so as to preclude the court from deciding the motion to compel as a matter of law. Haire v. Smith, Currie & Hancock LLP, No. 12-749 (JDB), 2013 WL 751035, at *2 (D.D.C. Feb. 28, 2013) (citing Hill, 865 F. Supp. 2d at 89).  To sustain

---

[2]  The Court does not reach Fannie Mae's, arguments for dismissal under Fed. R. Civ. P. 12(b)(6), and, therefore, does not set forth that standard of review.

its burden, the nonmoving party must "'go beyond the pleadings
and by [its] own affidavits, or by depositions, answers to
interrogatories, and admissions on file, designate specific
facts showing that there is a genuine issue for trial.'"
Amirmotazedi v. Viacom, Inc., 768 F. Supp. 2d 256, 260 (D.D.C.
2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986); Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir.
1987)).

## III. ANALYSIS

### A.    Legal Standard Under the Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.,
governs the enforcement of an arbitration agreement such as the
one at issue in this case.[3]   The FAA provides, in relevant part,
that "[a] written provision in any . . . contract evidencing a
transaction involving commerce to settle by arbitration a
controversy thereafter arising out of such contract . . . shall
be valid, irrevocable, and enforceable, save upon such grounds
as exist at law or in equity for the revocation of any
contract."   9 U.S.C. § 2.

Although "arbitration is a matter of contract and a party
cannot be required to submit to arbitration any dispute which he

---

[3] The Dispute Resolution Policy states that it "is an agreement
to arbitrate pursuant to the FAA" and must "be interpreted,
enforced, and governed under the FAA."  Policy § 16.

has not agreed to so submit[,]" <u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960), the FAA "establishes a liberal federal policy favoring arbitration agreements." <u>CompuCredit Corp. v. Greenwood</u>, -- U.S. --, 132 S. Ct. 665, 669 (2012) (citation and quotation marks omitted). Therefore, as our Court of Appeals has emphasized, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" <u>Wolff v. Westwood Mgmt., LLC</u>, 558 F.3d 517, 520 (D.C. Cir. 2009) (citing <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983)). This principle applies "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" <u>CompuCredit Corp.</u>, 132 S. Ct. at 669 (quoting <u>Shearson/Am. Express Inc. v. McMahon</u>, 482 U.S. 220, 226 (1987)).

Although the Supreme Court has long recognized and enforced a "liberal federal policy favoring arbitration agreements," <u>Moses H. Cone Memorial Hosp.</u>, 460 U.S. at 24, it has also made clear that there is an exception to this policy: the question whether the parties have submitted a particular dispute to arbitration, <u>i.e.</u>, the "question of arbitrability" is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise[.]" <u>AT & T Technologies, Inc. v.</u>

Communications Workers of America, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 Lawyers Ed. 648 (1986) (emphasis added).  As the court will discuss infra at III.B.1., in this case, the actual language in the Policy is clear and unmistakable.

**B.   The Dispute Resolution Policy Requires Each of the Pending Disputes to Be Submitted to Arbitration**

When a party invokes the FAA to compel arbitration, the Court first must determine whether there is a valid agreement to arbitrate.  See, e.g., Johns v. Newsmax Media, Inc., 887 F. Supp. 2d 90, 97 (D.D.C. 2012) (citing Nelson v. Insignia/Esg, Inc., 215 F. Supp. 2d 143, 150 (D.D.C. 2002)).  The Court then must assess whether the specific dispute falls within its scope. Id.  In answering these questions, ordinary state-law contract principles apply.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).[4]

**1.   There Is a Valid Agreement to Arbitrate**

In support of its Motion to Compel, Fannie Mae has submitted copies of Skrynnikov's Employment Application, Fannie Mae's Offer Letter, and its Dispute Resolution Policy. Skrynnikov's signature on the Employment Application and Offer Letter evidences his acceptance of the Dispute Resolution

---

[4]   Skrynnikov's opposition papers assume that District of Columbia law applies to the arbitration agreement.  Pl.'s Opp'n at 7-8.  Since Fannie Mae does not dispute this assumption, the Court will apply District of Columbia law.

Policy, particularly because these documents emphasize the Policy's requirement that he submit "certain employment-related claims to the mandatory arbitration process for final resolution prior to filing [such] claims in a court of law." Offer Letter at 1; see also Employment Application at 4 ("I acknowledge that, as a condition of employment, all Fannie Mae employees must agree to be bound by Fannie Mae's Dispute Resolution Policy, which requires that certain employment-related claims be submitted to arbitration before a suit can be brought on them in court.").

Under District of Columbia law, "'one who signs a contract has a duty to read it and is obligated according to its terms.'" Curtis v. Gordon, 980 A.2d 1238, 1244 (D.C. 2009) (quoting Pers Travel, Inc. v. Canal Square Assocs., 804 A.2d 1108, 1110-11 (D.C. 2002); see also Hughes v. CACI, Inc.-Commercial, 384 F. Supp. 2d 89, 96 (D.D.C. 2005) ("[A] signature on a contract indicates 'mutuality of assent' and a party is bound by the contract unless he or she can show special circumstances relieving him or her of such an obligation.") (citation and quotation marks omitted).

Skrynnikov does not deny that he signed Fannie Mae's Dispute Resolution Policy, and does not suggest that any special circumstances exist which would relieve him of his obligations

under the Policy.   Instead, he cites several cases addressing arbitration provisions in collective bargaining agreements for the proposition that the arbitration agreement in this case is unenforceable because it is not "clear and unmistakable" and contains only "sweeping broad statements."   Pl.'s Opp'n at 10 (citing, inter alia, Carson v. Giant Food, Inc., 175 F.3d 325, 331-32 (4th Cir. 1999)).

However, Skrynnikov did not accept the Dispute Resolution Policy as part of a collective bargaining agreement, and therefore, the stricter standard applicable in collective bargaining cases is not applicable in this case.   See, e.g., Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 80-81 (1998) (distinguishing "union's waiver of the rights of represented employees" from "individual's waiver of his own rights," and noting that "clear and unmistakable" standard did not apply to latter); Carson, 175 F.3d at 331 ("collective bargaining agreements to arbitrate[,] . . . unlike contracts executed by individuals, must be 'clear and unmistakable.'") (emphasis added) (citing Wright, 525 U.S. at 79-80).

Therefore, the Dispute Resolution Policy is not unenforceable simply because it uses broad and inclusive language.   See Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1221 (11th Cir. 2000) ("A party cannot avoid arbitration .

-10-

. . because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim.").

Finally, the actual language in the Policy is, in fact, clear and unmistakable.

### 2. Each of the Pending Disputes Falls Within the Scope of the Arbitration Agreement

Skrynnikov also argues that even if the agreement is enforceable, it only applies to "a small subset of the possible claims [he] might bring," and does not apply to his FCA claim because he did not "explicitly or by implication, agree to arbitrate claims under the False Claims Act." Pl.'s Opp'n at 9-11.[5]

The District of Columbia "adheres to an objective law of contracts, meaning that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties regardless of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake." Dyer v. Bilaal, 983 A.2d 349, 354-55 (D.C. 2009) (citation and internal punctuation marks omitted). In determining whether a contract is susceptible of a clear and definite interpretation, courts examine the document

---

[5]  Skrynnikov does not address whether the Policy applies to his FMLA and DCFMLA claims.

on its face and give the language its plain meaning. <u>Tillery v.</u>
<u>Dist. of Columbia Contract App. Bd.</u>, 912 A.2d 1169, 1176 (D.C.
2006) (citation omitted).

The Dispute Resolution Policy states that it applies to <u>any</u>
"claims that an employee might make against Fannie Mae . . .
<u>involving a legally-protected right</u>, that directly or indirectly
relate to his or her employment or the termination of that
employment[.]" Policy § 2 (emphasis added). This language,
which is broad and inclusive, has previously been held to apply
to whistleblower claims similar to Skrynnikov's. <u>See</u> <u>Taylor v.</u>
<u>Fannie Mae</u>, 839 F. Supp. 2d 259, 264 (D.D.C. 2012)(retaliation
claim under Sarbanes-Oxley whistleblower provision subject to
Fannie Mae's Dispute Resolution Policy); <u>Kimpson v. Fannie Mae</u>
<u>Corp.</u>, No 06-18 (RWR), 2007 WL 1020799, at *3 (D.D.C. Mar. 31,
2007) (noting "inclusive and comprehensive language of the
policy").

More importantly, even if the scope of the arbitration
agreement is ambiguous, as Skrynnikov contends, the Policy
provides that "[t]he <u>arbitrator</u> will resolve all disputes over
the . . . arbitrability of all matters presented under it[,]"
Policy § 16 (emphasis added), and thus it "clearly and
unmistakably" reserves the authority to decide which claims are
arbitrable to the arbitrator, rather than the court. <u>See</u>

-12-

<u>Carson</u>, 175 F.3d at 330 ("Those who wish to let an arbitrator decide which issues are arbitrable need only state that 'all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration,' or words to that clear effect."). That is precisely what Fannie Mae has written into its Policy. Therefore, Skrynnikov's FCA claim must be submitted to the arbitrator who will decide arbitrability issues.

### C. Fannie Mae's Rule 12(b)(6) Defenses Must Also Be Submitted to Arbitration

Fannie Mae also asks the Court to dismiss Skrynnikov's DCFMLA claim on statute of limitations grounds, and his FMLA claim for failure to state a cause of action. Def.'s Mem. P & A at 9-12. Fannie Mae argues that because these claims fail "[o]n the face of the complaint," they do not involve any "legally protected right(s)," and therefore, may be dismissed outright by the Court pursuant to Rule 12(b)(6), rather than being referred to arbitration. <u>Id.</u> at 14.

However, Fannie Mae's Dispute Resolution Policy expressly provides that claims brought under the FMLA (and by logical extension, the DCFMLA) are subject to arbitration. <u>See</u> Policy § 2 ("For example, claims asserting rights protected by the . . . Family and Medical Leave Act would be covered by the Policy.").

-13-

The Policy also states that "[i]f [Fannie Mae] contends that [a] claim was not made within the time limit [set by law for bringing suit on that claim in court] the arbitrator may be requested to decide the issue before any hearing on the substance of the claim." Policy § 6 (emphasis added). The Policy further contemplates that if Fannie Mae "assert[s] that the employee's claim is barred because it does not involve a legally-protected right, . . . the arbitrator may be requested to rule on this issue as a preliminary matter before conducting a hearing on the substance of the employee's claim." Policy § 2 (emphasis added).

Thus, it is perfectly clear that the arbitration agreement commits the resolution of Fannie Mae's defenses under Rule 12(b)(6) to the arbitrator, not the court.[6] "By its terms the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter

---

[6]   Even if the Dispute Resolution Policy was silent on this issue, judicial precedent also supports the referral of Fannie Mae's Rule 12(b)(6) defenses to arbitration. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) ("'[P]rocedural questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide.") (emphasis in original) (citing John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964)).

Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4); see also Nat'l R.R. Passenger Corp. v. Boston & Maine Corp., 850 F.2d 756, 759 (D.C. Cir. 1988) ("It is a necessary corollary of the principle that 'arbitration is a matter of contract' that when the parties have provided that a particular type of dispute should be settled in arbitration, rather than in litigation, a court may not override that agreement by itself deciding such a dispute.") (emphasis in original).

Moreover, although parties may waive their right to arbitration by acting "'inconsistently with the arbitration right,'" Khan v. Parsons Global Servs., Ltd., 521 F.3d 421, 425 (D.C. Cir. 2008)(citation omitted), Fannie Mae has made clear that, notwithstanding its request for dismissal of the FMLA and DCFMLA claims under Rule 12(b)(6), it is not waiving its right to arbitrate those claims. See Def.'s Mem. P & A at 14 ("If th[e] court . . . does not dismiss [the FMLA and DCFMLA claims], then [they] must be compelled to arbitration for further proceedings inasmuch as . . . the claims at issue . . . fall squarely within the agreement to arbitrate[.]"); Def.'s Reply Br. at 5 ("Any Surviving Claims . . . Should be Sent to Arbitration").

Accordingly, the Court will enforce the arbitration clause in its entirety, deny Fannie Mae's Rule 12(b)(6) Motion without prejudice, and refer the Rule 12(b)(6) issues to arbitration.

### C.   The Case Will Be Stayed

The FAA provides that when the court is satisfied that the issues before it are subject to arbitration, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]"  9 U.S.C. § 3.  Accordingly, this action will be stayed pending conclusion of arbitration.

### IV. CONCLUSION

For the foregoing reasons, Fannie Mae's motion to compel arbitration is GRANTED, and its motion to dismiss pursuant to Rule 12(b)(6) is DENIED without prejudice to renewal in arbitration.  An Order shall accompany this Memorandum Opinion.


May 8, 2013                        /s/ Gladys Kessler
                                   Gladys Kessler
                                   United States District Judge



Copies to: attorneys on record via ECF

-16-