UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIMOTHY SKRYNNIKOV,   :
          :
   Plaintiff,   :
          :
  v.       :  Civil Action No. 11-609 (GK)
          :
FEDERAL NATIONAL MORTGAGE :
ASSOCIATION,    :
          :
   Defendant.   :
          :

## MEMORANDUM OPINION

Plaintiff Timothy Skrynnikov ("Plaintiff" or "Skrynnikov") brings this action against Defendant Federal National Mortgage Association ("Defendant" or "Fannie Mae") alleging retaliation under the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., and interference with his rights under both the Federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and the related District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code § 32-501 et seq.

This matter is before the Court on Plaintiff's Motion for Summary Judgment ("Mot.") [Dkt. No. 54] and Defendant's Cross-Motion for Summary Judgment ("Cross-Mot.")[Dkt. No. 55]. Upon consideration of the Motion, the Cross-Motion, Oppositions [Dkt. Nos. 55 and 57], and Replies [Dkt. Nos. 57 and 59], and the entire record herein, and for the reasons set forth below, Plaintiff's

Motion for Summary Judgment is **denied**, and Defendant's Cross-Motion for Summary Judgment is **denied**.

I.    BACKGOUND

     A. Factual Background

     Fannie Mae is a government-sponsored corporation chartered by Congress, with its headquarters in the District of Columbia. Second Amended Complaint § 5 ("SAC") [Dkt. No. 23]. Mr. Skrynnikov was employed by Fannie Mae as a Senior Financial Analyst in the Financial Planning & Analysts group ("FP&A") from October 9, 2007 until November 13, 2009, when his employment was terminated. SAC ¶¶ 6, 38. Mr. Skrynnikov's job responsibilities included preparing a monthly document known as the Business Segment Allocation Report ("BSA Report"). Plaintiff's Statement of Undisputed Material Facts ¶ 5 ("Pl.'s SMF") [Dkt. No. 54-1]. The BSA Reports included information on "Executive Incentive Compensation." Id. ¶ 7.

     On March 18, 2009, United States Senator Charles Grassley requested "Fannie Mae and Fredie Mac to account for their retention bonus programs" ("the Grassley Request"). Pl.'s Ex. 36 [Dkt. No. 54-8]. Fannie Mae submitted its response to Senator Grassley on March 27, 2009. Def.'s Ex. 87 [Dkt. No. 55-29]. At some point in March 2009, Mr. Skrynnikov learned of the Grassley Request and Fannie Mae's response through a daily news blast emailed to Fannie

-2-

Mae employees. Arbitration Transcript at 134-35 ("Tr.") [Dkt. No. 54-3].

Mr. Skrynnikov alleges that he became concerned that the executive retention bonus data that Fannie Mae reported to Sen. Grassley did not match the numbers in the BSA Reports he had seen. Mot. at 2; Pl.'s SMF ¶ 12. He alleges that he raised these concerns with his supervisor at the time, Ms. Kristin DeMent Harrison. Id. He also claims that Ms. Harrison told him that the reported numbers would be updated in the next quarter. Id.

Mr. Skrynnikov claims that he raised these concerns again with Ms. Harrison on April 28, 2009. Mot. at 3; Pl.'s SMF ¶ 14. According to Mr. Skrynnikov, Ms. Harrison responded to his concerns with "agitation and anger." Id. Defendant denies that these conversations between Ms. Harrison and Mr. Skrynnikov took place. Cross-Mot. at 14; Tr. at 571-72. Mr. Skrynnikov alleges that after he raised his concerns about the Grassley Request with Ms. Harrison, she began to question his job performance. Mot. at 3. Defendant disputes this assertion.

On July 1, 2009, Ms. Harrison gave Mr. Skrynnikov a Written Warning for Unsatisfactory Job Performance informing him that Fannie Mae would terminate him if he did not improve within a reasonable time period. Pl.'s SMF ¶ 16.

On July 9, 2009, Mr. Skrynnikov sought permission from Ms. Carrie Lee, Fannie Mae's Human Resources representative, to take medical leave because of the stress he claims stemmed from his poor working relationship with Ms. Harrison. Pl.'s SMF ¶ 19. Ms. Lee directed Mr. Skrynnikov to contact the Reed Group, an independent company contracted by Fannie Mae to administer medical leaves of absence. Id. ¶¶ 20-23.

The Reed Group approved Mr. Skrynnikov's application for FMLA/DCFMLA leave. Id. ¶ 29. The Parties disagree on the original date until which Mr. Skrynnikov was originally granted leave. Nevertheless, after what appears to be extensive communication between Mr. Skrynnikov, his doctors, the Reed Group, and Fannie Mae's HR team, Mr. Skrynnikov was granted an extension of his FMLA leave through October 1, 2009, which represents the full twelve weeks permitted under the statute. Pl.'s SMF ¶ 29; Def.'s Resp. to Pl.'s SMF ¶ 29 [Dkt. No. 55-30].

Mr. Skrynnikov asserts that the communication between Fannie Mae and the Reed Group regarding the paperwork supporting his leave differed from Fannie Mae's normal practices regarding its involvement in the Reed Group's approval of employee leave. Mot. at 5-8. Defendant denies these allegations.

On October 26, after receiving additional paperwork from Mr. Skrynnikov's doctors justifying an extension of his leave, the Reed Group retroactively approved an extension of his leave under the DCFMLA which permits a maximum of 16 weeks leave, and Fannie Mae's short-term disability leave (STD), which is not protected leave. Cross-Mot. at 1; Pl.'s SMF ¶ 29; Def.'s Resp. to Pl.'s SMF ¶ 29.

Mr. Skrynnikov claims that he was ready and able to return to work after recovering from his depression and stress on October 26, 2009. Pl.'s Opp. at 12-13, n. 12. However, on October 21, 2009, he wrote to Ms. Lee requesting to use vacation time for up to a week because of a newly sustained rib injury. Pl.'s SMF ¶ 40; Pl.'s Ex. 68 [Dkt. No. 54-22]. Ms. Lee informed Mr. Skrynnikov that he would have to speak to management and the Reed Group regarding his request. Pl.'s SMF ¶ 43. Ms. Lee also stated that he could not return to work "unless [he was] cleared to return to work for both conditions" by the Reed Group. Id.

The approved return-to-work date of October 26, 2009 came and went without Mr. Skrynnikov providing the Reed Group with a new return-to-work clearance from a doctor. He did not return to work on that date. Pl.'s SMF ¶ 48. Fannie Mae instructed the Reed Group to place "the highest level of scrutiny" on Mr. Skrynnikov's

return-to-work certification regarding his rib injury. Pl.'s SMF ¶ 50; Def. Resp. to Pl.'s SMF ¶ 50. On October 30, 2009, Mr. Skrynnikov finally sent the Reed Group a return-to-work certification from a doctor indicating that he would be ready to return to work on November 2, 2009. Pl.'s SMF ¶¶ 52, 54; Def. Resp. to Pl.'s SMF ¶¶ 52, 54. That same day, Mr. Skrynnikov was retroactively approved for DCFMLA leave through October 29, 2009 and for STD through November 1, 2009, with a return to work date of November 2, 2009. Pl.'s SMF ¶ 55; Def. Resp. to Pl.'s SMF ¶ 55; Pl.'s Ex. 74 [Dkt. No. 54-24].

On October 30, 2009, Mr. Skrynnikov received a letter from Fannie Mae saying that he had exhausted his FMLA and DCFMLA leave and that Fannie Mae made a business decision not to hold his position open. Pl.'s SMF ¶ 58; Def. Resp. to Pl.'s SMF ¶ 58. Mr. Skrynnikov was terminated a few days later when his STD leave expired.

On November 15, 2009, Mr. Skrynnikov faxed a letter to Sen. Grassley detailing his concerns regarding Fannie Mae's reporting of executive incentive compensation. Pl.'s SMF ¶ 60; Pl.'s Ex. 61 [Dkt. No. 54-18].

## B. Procedural Background

Mr. Skrynnikov filed his Complaint with this Court on March 23, 2011. [Dkt. No. 1]. On June 12, 2012, Mr. Skrynnikov filed his First Amended Complaint. [Dkt. No. 21]. On October 11, 2012, Mr. Skrynnikov filed a Motion to Amend his Complaint [Dkt. No. 22], which the Court granted by Minute Order on October 15, 2012. On October 15, 2012, Mr. Skrynnikov filed his Second Amended Complaint, which is the operative Complaint in these proceedings.

On December 6, 2012, Defendant filed a Motion to Dismiss and to Compel Arbitration. [Dkt. No. 26]. On May 8, 2013, the Court denied Defendant's Motion to Dismiss without prejudice, but granted Defendant's Motion to Compel Arbitration and stayed the case pending the results of arbitration. May 8, 2013 Order [Dkt. No. 31].

On November 4, 2014, the Arbitrator issued a final award finding that Mr. Skrynnikov failed to prove the claims of both Count 1 (Retaliation under the False Claims Act) and Count 2 (Family and Medical Leave Interference). November 24, 2014 Joint Status Report at 1 [Dkt. No. 48]. On November 13, 2014, Mr. Skrynnikov rejected the Arbitrator's Award in its entirety, as provided for in Defendant's Dispute Resolution Policy. Id.

On February 4, 2015, Mr. Skrynnikov filed a Motion for Summary Judgment. On March 3, 2015, Defendant filed its Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. On April 3, 2015, Mr. Skrynnikov filed his Opposition to the Cross-Motion and Reply in support of his Motion for Summary Judgment ("Pl.'s Opp.") [Dkt. No. 57]. On May 4, 2015, Defendant filed its Reply in support of its Cross-Motion for Summary Judgment ("Def.'s Rep.") [Dkt. No. 59].

## II.   STANDARD OF REVIEW

Summary judgment should be granted only if the moving party has shown that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56, see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Perez, 823 F.3d 701, 705 (D.C. Cir. 2016). A dispute of material fact is "'genuine'. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In a summary judgment motion, the moving party has the responsibility for "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotation omitted).

The court should view the evidence in favor of the nonmoving party and draw all reasonable inferences in favor of that party making credibility determinations or weighing the evidence. Johnson, 823 F.3d at 705. "However, the nonmoving party may not rely solely on allegations or conclusory statements. Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor." Krishnan v. Foxx, 177 F. Supp. 3d 496, 503 (D.D.C. 2016) (citing Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).

## III. ANALYSIS

### A.   Retaliation under the False Claims Act (Count I)

The FCA was "designed to protect persons who assist the discovery and prosecution of fraud and thus to improve the federal government's prospects of deterring and redressing crime." U.S. ex rel. Schweizer v. Oce N.V., 677 F.3d 1228, 1237 (D.C. Cir. 2012) (internal citations omitted). To establish a claim for retaliation under the FCA, a Plaintiff must establish: "(1) acts by the employee 'in furtherance of' a suit under § 3730—acts also known as 'protected activity'; and (2) retaliation by the employer

against the employee 'because of' those acts." U.S. ex rel. Schweizer, 677 F.3d at 1237 (quoting United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 736 (D.C. Cir. 1998)).

To establish the first element of a claim under the FCA, a plaintiff must show that he had an "objectively reasonable basis to believe that []he was investigating matters that reasonably could lead to a viable False Claims Act case." Hoyte v. Am. Nat. Red Cross, 518 F.3d 61, 68 (D.C. Cir. 2008) (internal quotations omitted). A plaintiff's belief's must have been based on "the facts known by the employee at the time." Mann v. Heckler & Koch Def., Inc., 630 F.3d 338, 344 (4th Cir. 2010). Furthermore, "[a] protected activity . . . must evince some attempt to expose possible fraud." U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 735 (4th Cir. 2010).

To establish the second element of a claim under the FCA, a plaintiff must show that "(1) the employer ha[d] knowledge the employee was engaged in protected activity; and (2) [] the employer's adverse action against the employee [was] motivated, at least in part, by the employee's engaging in that protected activity." Id. (internal quotations omitted). To bring a successful FCA claim an employee need not alert his or her employer to the prospect of a FCA suit because the employee need not know

-10-

that his or her investigation or actions may lead to an FCA suit. Id. However, a plaintiff must raise concerns of fraud or illegality to his employer outside the normal scope of his job. See Id.

### 1. Plaintiff's Motion

In support of his FCA claim, Mr. Skrynnikov argues that "the force driving [his] termination was retaliation for his vocal objections to his supervisor, Kristin DeMent Harrison, over Fannie Mae's misrepresentations to the United States Senate regarding the bonuses that Fannie Mae paid to its executives." Mot. At 17. Considered in the light most favorable to Defendant, Mr. Skrynnikov's Motion for Summary Judgment must be denied on this claim.

The Court cannot grant summary judgment on Mr. Skrynnikov's FCA claim because there is a genuine dispute of material fact as to whether he had an "objectively reasonable belief," Hoyte, 518 F.3d at 68, that Fannie Mae was defrauding the government based on "the facts known by [Mr. Skrynnikov] at the time," Mann, 630 F.3d at 344.

Defendant asserts that Mr. Skrynnikov could not have had a good faith basis for his belief that Fannie Mae was defrauding the government in its response to Sen. Grassley's request for

information regarding Fannie Mae's bonus compensation, because Mr. Skrynnikov was not privy to either the details of Sen. Grassley's Request or the financial records and bonus plan designs relevant to Fannie Mae's response. Defendant states that neither Mr. Skrynnikov nor his supervisors were involved in Fannie Mae's response to the Grassley Request. Tr. at 178, 573. Plaintiff himself has admitted that he was not involved in preparing Fannie Mae's response to Senator Grassley. Plaintiff's Response to Defendant's Statement of Material Facts ¶¶ 3-17, 19, 21-22 ("Pl.'s Resp. to SMF") [Dkt. No. 57-1].

Furthermore, the information provided to Sen. Grassley was "highly restricted" and not readily available to all employees. Roden Dep. 11 [Dkt. No. 55-4]. Defendant asserts that any information provided to employees on the FP&A team, including Mr. Skrynnikov, did not contain any payroll or incentive compensation data that would have been relevant to Sen. Grassley's Request. Id.; Tr. 571. Without access to this information, Mr. Skrynnikov's view that Fannie Mae's reporting of its retention bonus information was fraudulent could not have been objectively reasonable based on the facts available to him at the time. See Hoyte, 518 F.3d at 68-69 (quoting Lang v. Nw. Univ., 472 F.3d 493, 495 (7th Cir. 2006) ("What [FCA relator] actually believed is irrelevant, for people

believe the most fantastic things in perfect good faith; a kind heart but empty head is not enough. The right question is whether [his] belief had a reasonable objective basis....").

Therefore, in the light most favorable to Defendant, there remains a genuine dispute of material facts as to whether Mr. Skrynnikov's view that Fannie Mae was defrauding the government was objectively reasonable based on the facts at his disposal.

Defendant also argues that even if Mr. Skrynnikov did engage in protected activity, he cannot satisfy the second element of a claim under the FCA because he has not established that Fannie Mae knew that he was engaging in FCA-protected activity. Cross-Mot. at 13. In order to satisfy this element, Mr. Skrynnikov must show that he put Fannie Mae on notice that he was working outside the usual course of his employment to expose the alleged fraudulent reporting to Sen. Grassley. See Owens, 612 F.3d at 735; Schweizer, 677 F.3d at 1238-39. "Simply reporting his concern of a mischarging to the government to his supervisor does not suffice" to establish that Mr. Skrynnikov was acting to expose the alleged fraud. Owens, 612 F.3d at 735.

Mr. Skrynnikov alleges that he raised concerns to his supervisors about Fannie Mae's reporting to Sen. Grassley. Pl.'s SMF at 11; Mot. at 19. However, Mr. Skrynnikov's supervisors have

-13-

testified that Mr. Skrynnikov never raised these concerns. Ms. Harrison testified that Mr. Skrynnikov never spoke to her about the Grassley request at all. Tr. at 30, 571-572. Mr. Skrynnikov's other supervisors, Mr. Roden, Ms. Lee, and Ms. McGwin, also testified that Mr. Skrynnikov did not raise concerns about the Grassley request to them. Roden Dep. at 17; Tr. at 405, 536. Viewed in the light most favorable to Defendant, Mr. Skrynnikov has not shown based on undisputed facts that he put Fannie Mae on notice of his investigation of the alleged fraud.[1]

## 2. Defendant's Cross-Motion

Defendant argues that it is entitled to summary judgment on Mr. Skrynnikov's FCA claim. Drawing all reasonable inferences in favor of Mr. Skrynnikov, this court finds that genuine disputes of fact remain such that a reasonable jury could return a verdict for Mr. Skrynnikov on Claim I.

Defendant argues that Mr. Skrynnikov did not engage in an activity entitling him to the protections of the FCA because he did not have an objectively reasonable belief that Fannie Mae was

---

[1] Since the facts cannot support Mr. Skrynnikov's establishment of the knowledge prong of the second element of a FCA claim, this court will not address whether Mr. Skrynnikov has satisfied the causation prong.

defrauded the government. Cross-Mot. at 8-13. Defendant primarily argues that Mr. Skrynnikov could not have held an objectively reasonable belief that Fannie Mae fraudulently reported an incentive compensation amount that was only twenty percent of the actual incentive compensation amount because he was not involved in Fannie Mae's response to the Grassley Request and he was not privy to the information sources for Fannie Mae's response.

Mr. Skrynnikov's response to these arguments raises material facts in dispute. Mr. Skrynnikov states that he did, in fact, have access to the retention bonus information that Sen. Grassley was seeking. Pl.'s Opp. at 19. One of Mr. Skrynnikov's responsibilities in the FP&A group was to prepare a monthly BSA Report. Pl.'s SMF ¶ 5. Mr. Skrynnikov alleges that this document included executive incentive compensation data that was relevant to Sen. Grassley's Request. Id. ¶ 9; Pl.'s Exs. 29, 30, 31 [Dkt. Nos. 54-5, 54-6, 54-7]. Mr. Skrynnikov explains that after seeing Fannie Mae's response to Sen. Grassley, he realized that the reported numbers were only about twenty percent of the number appearing in the BSA Report. Mot. at 19.

Defendant argues that Mr. Skrynnikov's suspicions of fraud could not have been reasonable because he was not involved in preparing Fannie Mae's response and therefore could not have known

if the response was correct. Cross-Mot. at 8-13. However, Mr. Skrynnikov need not have been involved in the preparation of Fannie Mae's response to Sen. Grassley in order to have learned of the contents of the request and response.

Mr. Skrynnikov testified that he learned of Sen. Grassley's Request through a daily news blast emailed to Fannie Mae employees. Tr. at 134-35. Mr. Skrynnikov was able to read the text of Sen. Grassley's Request online. See Pl.'s Ex. 36 at 2. With the text of Sen. Grassley's Request in hand, Mr. Skrynnikov could reasonably assume that his request for bonus amounts relating to the "Retention Program and any other bonus compensation arrangements," Id., included the total amount of executive incentive compensation included in the BSA Reports.

Defendant also argues that merely comparing the BSA Report numbers to those in Fannie Mae's response to Sen. Grassley and raising concerns of fraudulent reporting to supervisors is not enough to constitute an act in furtherance of a suit under the FCA. However, "internal reporting" that involves "gather[ing] evidence" and "shar[ing] that evidence with [] superiors" "is a classic example of protected activity." Schweizer, 677 F.3d at 1240.

Defendant further asserts that Mr. Skrynnikov cannot sustain a claim under the FCA because he did not notify Fannie Mae that he suspected fraud or illegality and did not do so outside the scope of his job. Cross-Mot. at 13. However, Mr. Skrynnikov testified that he raised his concerns about the discrepancies between the BSA Reports and Fannie Mae's response to Sen. Grassley with Ms. Harrison twice, because he "knew that you need to be absolutely honest when you're answering an officer of the U.S. Government . . . and I did not feel that the answer was what was being asked, that it was a full answer." Tr. at 148. Defendant denies that Mr. Skrynnikov raised his concerns with Ms. Harrison, but viewed in the light most favorable to Mr. Skrynnikov this Court cannot find that he did not notify Defendant of his concerns.

Finally, Defendant argues that Mr. Skrynnikov was not fired because of his investigation into Fannie Mae's response to Sen. Grassley. Instead, Defendant argues that Mr. Skrynnikov was fired "after he exhausted all his job-protected leave because his position had been eliminated and there was not another open position for which he was qualified." Def.'s Rep. at 7. Defendant also points to Mr. Skrynnikov's poor job performance as a legitimate reason for his termination. Cross-Mot. at 17.

-17-

Drawing all reasonable inferences in favor of Mr. Skrynnikov, this Court finds that a juror could credit his testimony that Ms. Harrison's behavior towards him changed after he expressed his concerns about the Grassley Request. Mr. Skrynnikov also alleges that the Fannie Mae HR department was far more involved in his FMLA/DCFMLA leave certification process than was their custom leaving Mr. Skrynnikov to draw the inference that Fannie Mae was doing so in an attempt to terminate him in retaliation for his investigation into the company's response to the Grassley Request. Given that this case is before the Court on a Motion for Summary Judgment, the Court is required to deny it because a reasonable juror could credit Mr. Skrynnikov's testimony.

### B. Interference with Plaintiff's Family Medical Leave (Count II)

"The FMLA [] guarantees eligible employees 12 weeks of leave in a 1-year period following . . . a disabling health problem." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002). The DCFMLA provides the same protection for a period of 16 weeks. D.C. Code § 32-503. "Leave must be granted, when medically necessary, on an intermittent or part-time basis," and "[u]pon the employee's timely return, the employer must reinstate the employee

-18-

to his or her former position or an equivalent." Id. (internal citations omitted).

Under the FMLA, it is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this chapter." 29 U.S.C. § 2615(a)(1). The DCFMLA provides substantially similar protections. See D.C. Code 35-507; DCMR 4-1621.1.

To state a claim of interference under the FMLA or DCFMLA, a plaintiff must establish: (1) that his employer interfered with his exercise of protected rights and (2) that the interference caused prejudice. See McFadden v. Ballard, Spahr, Andrews & Ingersoll, LLP, 611 F.3d 1, 7 (D.C.Cir. June 29, 2010). "An employer interferes with protected rights when it interferes with, restrains, or denies the exercise of any right provided by the Acts." Cobbs v. Bluemercury, Inc., 746 F. Supp. 2d 137, 144 (D.D.C. 2010); 29 U.S.C. § 2615(a)(1); D.C.Code § 32-507. "Prejudice exists where an employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief. Cobbs, 746 F. Supp. 2d at 144; 29 U.S.C. § 2617(a)(1); D.C.Code § 32-509(b)(6).

Neither Party disputes that Mr. Skrynnikov was fired from his job at Fannie Mae. Nor do the Parties dispute that termination would constitute "prejudice" under the second element of a FMLA/DCFMLA claim. Thus, the Parties' dispute revolves around the first element of a claim under the FMLA/DCFMLA, that is, whether Fannie Mae interfered with Mr. Skrynnikov's exercise of a right under the FMLA/DCFMLA.

### 1. Plaintiff's Motion

Mr. Skrynnikov alleges that Defendant violated his rights under the FMLA/DCFMLA in two ways. Primarily, he argues that Fannie Mae interfered with his right to reinstatement at the end of his protected leave period.

Under the FMLA and DCFMLA, "an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position . . . even if his or her position has been restructured to accommodate the employee's absence. 29 CFR § 825.214; see Joyce v. Office of Architect of Capitol, 966 F. Supp. 2d 15, 29 (D.D.C. 2013) (holding that under the FMLA, an employee "must be given the option of returning to an equivalent position"). Mr. Skrynnikov claims that Fannie Mae denied him this right under the FMLA and DCFMLA by preventing him

from returning to work on November 2, 2009 and by terminating his employment at the same time.

Defendant argues that Mr. Skrynnikov's termination had nothing to do with his FMLA leave; rather, he would have been terminated anyway because his job became automated and because of poor performance. See Washington Convention Ctr. Auth. v. Johnson, 953 A.2d 1064, 1077 (D.C. 2008) ("It is well-established that the federal FMLA, to which we may look for guidance, simply does not force an employer to retain an employee [who is] on FMLA leave when the employer would not have retained the employee had the employee not been on FMLA leave") (internal citations omitted).

"The burden is on the employer to show that, for other reasons, an employee would not have been employed when the time for reinstatement came." Washington Convention Ctr., 953 A.2d at 1077; Hopkins v. Grant Thornton Int'l, 851 F. Supp. 2d 146, 156 (D.D.C. 2012), aff'd sub nom. Hopkins v. Grant Thornton, LLP, 529 F. App'x 1 (D.C. Cir. 2013) ("an employer has the burden of proving that an employee dismissed during FMLA leave would have been dismissed regardless of the employee's request for leave").

Viewed in the light most favorable to Defendant, Fannie Mae has provided sufficient evidence in support of its argument to withstand Plaintiff's Motion for Summary Judgment. A

-21-

representative of Fannie Mae testified that Mr. Skrynnikov was fired because "the work that he had been performing over time was fully automated." Tr. at 618-19. Furthermore, she testified that he "was not a strong performer." Id. at 613. Fannie Mae has provided performance reviews to support this statement. See Def.'s Ex. 33 [Dkt. No. 55-10]. Defendant also asserts that it could not create a new role for Mr. Skrynnikov because FP&A "was under extreme budget pressure at the time resulting from the financial crisis then roiling the country, and nothing was backfilled for Mr. Skrynnikov's particular position." Cross-Mot. at 27; see Tr. at 619, 622.

Defendant also claims that Mr. Skrynnikov cannot succeed on his FMLA/DCFMLA claim because he lacked the proper return-to-work certification and was therefore unable to return to work when his leave was exhausted on October 29, 2009. Cross-Mot. at 21. Defendant argues that it was entitled to require additional return-to-work certification from Mr. Skrynnikov because under D.C. Mun. Regs. 4-1615.9(a), an employer may require that "an employee obtain subsequent recertifications  if: (a) [t]he employee requests an extension of leave or a different type or frequency of leave, beyond what the employee requested in the employee's initial certification or request for DCFMLA leave."

-22-

It is undisputed that Mr. Skrynnikov did not submit his return-to-work certification for his rib injury until October 30, 2009- one day after his protected leave had expired. Pl.'s SMF ¶¶ 52, 54; Def. Resp. to Pl.'s SMF ¶¶ 52, 54. Mr. Skrynnikov denies that his request for additional leave for his rib injury constituted a request for DCFMLA leave, and that his injury was serious enough to constitute a disabling health problem under the DCFMLA. However, considered in the light most favorable to Defendant, a juror could find that Mr. Skrynnikov was unable to return to work when his DCFMLA leave expired due to lack of proper return-to-work certification. Mr. Skrynnikov's Motion must therefore be denied on this count.

### 2. Defendant's Cross-Motion

Defendant asks that this Court grant Summary Judgment on Mr. Skrynnikov's FMLA/DCFMLA claims because his job was terminated for legitimate reasons, no comparable jobs for which he was qualified were available, and Mr. Skrynnikov did not return to work when his DCFMLA leave was exhausted on October 29, 2009. Mr. Skrynnikov, on the other hand, alleges that Defendant's "legitimate reasons" for firing him were merely pretext for retaliation in violation of the FCA and that he was willing and able to return to work before the expiration of his DCFMLA leave. Viewed in the light most favorable

-23-

to Mr. Skrynnikov, the facts presented are sufficient to withstand Defendant's Motion for Summary Judgment.

"For an employer lawfully to deny an employee's restoration rights, it must show that the termination for other reasons would have been lawful." Johnson, 953 A.2d at 1077. As detailed above, Fannie Mae alleges that Mr. Skrynnikov was terminated because his job became automated, because of budgetary restrictions within his department, and because he was a poor performer. See supra at 21-22; Price v. Washington Hosp. Ctr., 321 F. Supp. 2d 38, 47 (D.D.C. 2004) (refusal to reinstate employee after FMLA leave was legitimate when employee's position was eliminated pursuant to a reduction in force; Cross-Mot. at 27; Tr. at 618-19, 622.

Mr. Skrynnikov alleges that these reasons are merely pretext for retaliation in violation of the FCA. As explained above, Mr. Skrynnikov has presented facts from which a reasonable juror could conclude that he was terminated in violation of the FCA. See supra at III.A.2. Therefore, at this time, drawing all inferences in Mr. Skrynnikov's favor, the Court cannot conclusively find that he was fired for legitimate reasons.

Defendant also claims that Mr. Skrynnikov cannot succeed on his FMLA/DCFMLA claim that he was unable to return to work when his leave was exhausted on October 29, 2009 because he lacked the proper return-to-work certification. Cross-Mot. at 21. Defendant cites D.C. Mun. Regs. 4-1615.9(a) in support of its decision to prohibit Mr. Skrynnikov from returning to work without a return-to-work certification for his rib injury. Def.'s Rep. at 9.

The regulations states that, "[t]he employer may require that the employee obtain subsequent recertifications if: [t]he employee requests an extension of leave or a different type or frequency of leave, beyond what the employee requested in the employee's initial certification or request for DCFMLA leave." This regulation does not support Fannie Mae's position. As Mr. Skrynnikov correctly notes, Section 1615 of the statute deals with certification for DCFMLA leave, not for return to work. While a new request for leave may trigger recertification requirements in order to implement the leave, nothing in the statute indicates that a request based on a new type of injury could automatically trigger return-to-work certification requirements relating to the new injury without the employer first approving DCFMLA leave for the new injury.

Defendant next argues that even though Mr. Skrynnikov did not formally request DCFMLA leave for his rib injury, Fannie Mae was

-25-

at liberty to single-handedly grant him DCFMLA leave. Cross-Mot. at 22. This argument defies logic. As Mr. Skrynnikov points out, the purpose of the DCFMLA is to protect employees, not to impose unwanted leave on them and prevent them from returning to work for which they are capable of performing. See Escriba v. Foster Poultry Farms, Inc., 743 F.3d 1236, 1244 (9th Cir. 2014) Citing Wysong v. Dow Chem. Co., 503 F.3d 441, 449 (6th Cir.2007) for the proposition that "[a]n involuntary-leave claim," alleging that an "employer forces an employee to take FMLA leave," is "really a type of interference claim").

Drawing all reasonable inferences in Mr. Skrynnikov's favor, he has presented facts that indicate that he did not want to be placed on DCFMLA leave for his rib injury, but simply requested to use vacation days while his ribs finished healing. See Pl.'s SMF ¶40; Pl.'s Ex. 68. Assuming this is true, Fannie Mae was not at liberty to prevent Mr. Skrynnikov from returning to work without additional certification under the DCFMLA.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment shall be **denied**; and Defendant's Cross-Motion for Summary Judgment shall be **denied**. An Order shall accompany this Memorandum Opinion.

January 3 , 2017                    _Gladys Kessler_
                                    Gladys Kessler
                                    United States District Judge

<u>Copies to</u>: attorneys on record via ECF