UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIMOTHY SKRYNNIKOV,

    *Plaintiff*,

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

    *Defendant*.

Civil Action No. 11-609 (TJK)

## MEMORANDUM OPINION

Timothy Skrynnikov sued his former employer the Federal National Mortgage Association—commonly known as Fannie Mae—asserting various causes of action related to his medical leave and subsequent termination. Regrettably, the case has had a long and winding road to resolution. Since a prior judge assigned to the case denied earlier cross-motions for summary judgment, Skrynnikov voluntarily dismissed his claim alleging retaliation under the False Claims Act, the parties withdrew their request for a jury trial, and they opted instead to file renewed motions for summary judgment on the only remaining count, which alleges interference with Skrynnikov's rights under the federal Family and Medical Leave Act and its District of Columbia analogue. For the reasons explained below, the Court will grant Fannie Mae's motion for summary judgment, deny Skrynnikov's, and enter judgment for Fannie Mae.

**I.**     **Factual Background**

In July 2009, Skrynnikov began taking leave from his position as a senior financial analyst at the Federal National Mortgage Association ("Fannie Mae") for depression and stress.[1]

---

[1] The Court assumes familiarity with the facts set forth in the prior relevant Memorandum Opinion, ECF No. 61, and recounts only those relevant to the remaining claims at issue.

ECF No. 106-6 ¶¶ 1, 6–8.  On September 24, Fannie Mae, through its third-party leave and short-term-disability administrator Reed Group, sent Skrynnikov his Family and Medical Leave Act ("FMLA") exhaustion letter letting him know that he would exhaust his federal FMLA on October 1, 2009.  ECF No. 106-6 ¶¶ 9, 49; ECF No. 114-1 ¶ 23.  Skrynnikov "was not capable of returning to work" by that date.  ECF No. 114-1 ¶ 24.  Thus, he exhausted his twelve weeks of FMLA leave on October 1, 2009.  ECF No. 106-6 ¶ 49.

Into October, then, the District of Columbia analogue ("DCFMLA") to the federal FMLA protected Skrynnikov's job when on leave, and he received his full salary from Fannie Mae through its short-term disability program, subject to Fannie Mae's Short-Term Disability Policy.  ECF No. 103-1 at 352:4–353:5; ECF No. 114-1 ¶ 25.  That policy covers employees who are "absent for five consecutive days," "under the continuous care of a physician," and following "any prescribed treatments, standard, or practice."  ECF No. 106-5 at 34.  Fannie Mae also had a "Return to Work" policy for employees returning from "leave that is medically related" that they had to notify Reed Group of their intended return and submit "a medical release form from the physician or caregiver . . . noting any work restrictions or limitations."  ECF No. 106-5 at 39.  "Reed Group then notifies the manager of the employee's ability to return to work."  *Id*.

Skrynnikov's DCFLMA leave, however, was set to expire after October 25, unless it was extended.  ECF No. 114-1 ¶ 25.  And so on October 20, Skrynnikov faxed Reed Group documentation from his therapist showing that he could return to work from his mental-health condition on October 26, and Reed Group approved that return-to-work certification.  ECF No. 103-11 at 4; ECF No. 106-6 ¶¶ 23–24.

But the next day, October 21, Skrynnikov emailed Carrie Lee, a Fannie Mae human resources employee.  ECF No. 114-1 ¶¶ 13, 26.  Rather than return to work on October 26 when

his DCFMLA leave was scheduled to expire, he requested to "use one week of . . . accrued vacation time" to return on November 2 because he "was in a slip and fall accident and broke three ribs." ECF No. 103-12.  Further, Skrynnikov wrote, he "should be fully recovered from it in about a week." *Id*.  But he also noted that if "additional time" was "not possible," he could return as scheduled on October 26.  *Id.*  Skrynnikov's email referred Lee to a note he attached "from GW hospital concerning the diagnosis." *Id*.  That note only included the first of two pages of "discharge instructions" from the George Washington University Hospital's Emergency Department stating that he had sustained three broken ribs on October 12, 2009, and that the injury would take "3–4 weeks" to heal.  ECF No. 103-17 at 2–3; *see* ECF No. 114-1 ¶¶ 27–28.  But Skrynnikov failed to send the second page, which stated that he could "return to work without restriction on 10/16/2009."  ECF No. 103-17 at 2–3; *see* ECF No. 114-1 ¶¶ 27–28.

An employee at Reed Group called Skrynnikov the next morning, October 22, and told him that Fannie Mae "need[s] to know he is able to work" and that if he sent Reed Group "an out of work note," it could extend his short-term disability payments.  ECF No. 114-1 ¶¶ 31–32.  Shortly after, Lee responded to Skrynnikov's email and instructed him "to work through The Reed Group to get all medical approvals for [his] return to work," and she referred him to management for an answer to his vacation request.  ECF No. 103-15.  Because Skrynnikov had explained that his request was "based on a new/different medical condition" from the one for which he first took leave, Lee wrote that he needed to inform Reed Group of that new condition and his inability to return on October 26, and that he "[could not] return to work" unless he is "cleared to return to work for both conditions." *Id.*  Skrynnikov did not contact his manager or anyone else at Fannie Mae about using his accrued vacation.  ECF No. 103-1 at 233:10–17, 396:4–9, 618:6–9.

3

Skrynnikov replied to Lee later on October 22: "I spoke with the Reed group and was advised that since I do not have a medical need to be out due to the rib fracture, that injury does not need to be filed as continuation of [short-term disability] and that I can return to work on Oct 26th." ECF No. 103-15. "Fannie Mae [then] emailed the Reed Group explaining its Return to Work policy" under its short-term disability program because "[n]ow that [Skrynnikov] ha[d] made [Fannie Mae] aware" of his new rib injury—which, according to the incomplete emergency-room note that Skrynnikov provided, appeared to have a "3–4 week timeframe" for recovery—Fannie Mae believed it had "a duty to ensure that he is not a danger to himself or others in the workplace." ECF No. 114-1 ¶ 37. So Reed Group clarified with Skrynnikov that he "needed to provide a second release" for the rib condition. ECF No. 103-1 at 231:1–4.

Then, recognizing that Skrynnikov had not followed up with management about using accrued vacation time, Lee told Skrynnikov that he had two remaining options. He could (1) provide Reed Group "a release to return to work for [the] second condition" (his broken ribs) or (2) provide "certification to extend [his] disability case with the advent of this new condition." ECF No. 114-1 ¶ 42. Skrynnikov chose the second option and "requested" that Reed Group "approv[e] him" for an extension of short-term disability benefits until November 2, 2009, because of the rib injury. ECF No. 114-1 ¶ 66; *see also id.* ¶ 61.

Over the next week, Skrynnikov and Reed Group communicated back and forth about his rib injury as he gathered medical documentation for an eventual return to work. ECF No. 106-6 ¶¶ 37–39; ECF No. 114-1 ¶¶ 40–41, 47–49. On October 28, Skrynnikov faxed the Reed Group a "Patient's Absentee Excuse Form" from an urgent care center to Fannie Mae stating that he could return to work on November 2, 2009—a return date that Skrynnikov suggested, ECF No. 114-1 ¶ 45—but the form did not speak to his rib condition, ECF No. 103-16; ECF No. 106-6

¶ 40. Reed Group told Skrynnikov that it needed more information, such as "a diagnosis and treatment plan," to approve an extension of short-term disability benefits. ECF No. 106-6 ¶ 46; ECF No. 114-1 ¶ 54. The next day, October 29, Skrynnikov faxed Reed Group the emergency-room discharge-instruction page that he had sent Fannie Mae over a week before, again revealing a diagnosis of broken ribs—but again without the second page that included a return-to-work date. ECF No. 114-1 ¶¶ 56–57.[2]

Finally, on October 30, 2009, Skrynnikov provided a fitness-for-duty certification; he faxed an updated doctor's note from the urgent care center to Reed Group, which contained both a diagnosis ("rib fracture") and a return-to-work date of November 2, 2009. ECF No. 114-1 ¶ 61. Reed Group then "retroactively approved Mr. Skrynnikov through October 29" for DCFMLA and through November 1 for short-term disability under Fannie Mae's policy. *Id.* ¶ 63. At the same time, "Fannie Mae sent Mr. Skrynnikov a letter informing him that he had exhausted his FMLA and DCFMLA time," he was no longer in a "job-protected status," Fannie Mae would not "continue to hold [his] position open" for him, and he "should not return to the office." *Id.* ¶ 66; ECF No. 106-6 ¶ 54.

## II.   Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing

---

[2] Indeed, until discovery in this litigation, Skrynnikov never shared with Reed Group or Fannie Mae the second page of the George Washington University Hospital discharge instructions certifying an October 16 return from his rib injury; in fact, Skrynnikov incorrectly represented to Reed Group that George Washington University Hospital had never given him such a certification. ECF No. 114-1 ¶¶ 56–58, 60.

5

all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). To survive summary judgment, a plaintiff must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Courts "are not to make credibility determinations or weigh the evidence." *Lopez*, 826 F.3d at 496 (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). But the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

**III.   Analysis**

Skrynnikov's burden is to show both that Fannie Mae "interfere[d] with, restrain[ed], or den[ied] the exercise of or the attempt to exercise, any right provided" by the FMLA, 29 U.S.C. § 2615(a)(1), or the DCFMLA, and that he was prejudiced thereby. *See McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 7 (D.C. Cir. 2010) (citing the elements of an interference claim under the FMLA); *cf. Alford v. Providence Hosp.*, 945 F. Supp. 2d 98, 105 n.7 (D.D.C. 2013), *aff'd*, 561 F. App'x 13 (D.C. Cir. 2014) (per curiam) ("Courts interpret the FMLA and the DCFMLA similarly."). Even viewing the evidence in the light most favorable to him, no reasonable jury could find for him under either the FMLA or the DCFMLA.

A.      The FMLA

The FMLA only "guarantees eligible employees 12 weeks of leave in a 1-year period following . . . a disabling health problem," *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86 (2002); 29 U.S.C. § 2612(a)(1)(D), and it requires employers to update employees on how much leave they have used, 29 C.F.R. § 825.300(d)(6). After those twelve weeks expire, the FMLA "permit[s] termination when an employee remains absent from work." *Alford*, 945 F. Supp. 2d at 105.

The parties agree that Skrynnikov exhausted his twelve weeks of FMLA leave on October 1, 2009, and that Reed Group sent Skrynnikov his FMLA exhaustion letter on September 24 updating him on his impending exhaustion of federal FMLA. ECF No. 106-6 ¶ 49; ECF No. 114-1 ¶¶ 23–24. But Skrynnikov "was not capable of returning to work by October 1," ECF No. 114-1 ¶ 24, and the FMLA does not require Fannie Mae to have held his job open until he could return. All of Fannie Mae's purported interference with Skrynnikov's FMLA leave occurred after he exhausted that leave. Fannie Mae thus is entitled to summary judgment on his FMLA claim.

B.      The DCFMLA

The DCFMLA, D.C. Code § 32-507(a), generally mirrors the FMLA, save for its provision of sixteen weeks' leave in a twenty-four-month period instead of twelve weeks' leave in a twelve-month period. *See id.* § 32-503(a). The DCFMLA is also different from the FMLA in what it does not cover. It does not require notice to employees that their leave is about to be exhausted, and it is silent on "return-to-work" or "fitness-for-duty" certifications. In sum, those differences prevent a reasonable factfinder from concluding, on the record here, that Fannie Mae interfered with Skrynnikov's rights under the DCFMLA. Thus, summary judgment is appropriate for Fannie Mae on this claim as well.

Skrynnikov alleges four theories of interference with his DCFMLA leave: (1) Fannie Mae failed to notify him of the end of his protected-leave period; (2) it demanded a fitness-for-duty certification for a condition different from the condition for which he went out on leave; (3) it delayed his return to work while it sought clarification of his fitness-for-duty certification; and (4) it refused to allow him to return to work at the end of his approved leave period and terminated his employment because of that failure to return.  ECF No. 103 at 25.

First, as for Fannie Mae's failure to notify Skrynnikov that he was about to exhaust his DCFMLA leave, Skrynnikov cannot point to any DCFMLA equivalent to 29 C.F.R. § 825.300(d)(6) that required Fannie Mae to so notify him.  Even though courts often read FMLA and DCFMLA provisions similarly, the Court cannot read a federal regulation into District of Columbia law, and Skrynnikov points to no court that has done so in this circumstance.  So Fannie Mae's failure to notify Skrynnikov that his DCFMLA leave was about to be exhausted does not support a claim that Fannie Mae interfered with his rights under the DCFMLA.

Second, for similar reasons, Skrynnikov cannot show that Fannie Mae interfered with his DCFMLA rights by demanding a fitness-for-duty certification for his rib injury, a different condition than the one for which he first went out on leave.  While the FMLA prohibits employers from requiring a fitness-for-duty certification under such circumstances, 29 C.F.R. § 825.312(b), the DCFMLA contains no such prohibition.  Similarly, that alone is likely enough to warrant summary judgment for Fannie Mae on this theory of liability.

But on top of that, District of Columbia law is not merely silent on the matter.  Section 1605.5 of Title 4 of the District of Columbia Municipal Regulations provides that if "an employee wish[es] to use paid medical, sick, vacation, personal, or compensatory leave which

8

the employee has accrued, the employee may use such paid leave, provided that it otherwise meets the employer's requirements for the taking of such paid leave." Thus, the law affirmatively permits Fannie Mae to enforce its own policies and practices on returning to work and its "paid leave" short-term disability program. And that is what the undisputed record shows it did here.

The "threshold" for Fannie Mae's Short-Term Disability Policy—one that is more generous than the FMLA in terms of what conditions qualify for coverage—is medical conditions requiring a "week," or "five consecutive days of absence." ECF No. 106-5 at 34; ECF No. 103-1 at 334:19–21, 335:19–21, 353:20–22. And when Skrynnikov first alerted Fannie Mae to his three broken ribs, he suggested that he would "be fully recovered from [the rib injury] in about a week," on top of the week that had already passed before he notified Fannie Mae. ECF No. 103-12. Plus, the only medical documentation he provided (page one of his discharge instructions) showed that the injury would take "3–4 weeks" to heal. ECF No. 103-17 at 2–3; *see* ECF No. 114-1 ¶¶ 27–28. So Fannie Mae concluded, based on the only medical evidence it had—and despite Skrynnikov's lay suggestion that he could return to work sooner—that under its Short-Term Disability Policy his rib injury was a new "disability" arising "from different and unrelated causes." ECF No. 106-5 at 34. And, concerned with its "duty to ensure that" Skrynnikov did not return too early when he could be "a danger to himself or others in the workplace," ECF No. 114-1 ¶ 37, it required a fitness-for-duty certification for that disability.

Ultimately, Skrynnikov himself conceded that his rib condition qualified as a disability when he "requested" Reed Group to "approv[e] him" for an extension of short-term disability benefits until November 2, 2009, because of the rib injury. ECF No. 114-1 ¶ 66; *see also id*. ¶ 61. And because Skrynnikov had—without any question, by that point—reported a new

9

disability, Fannie Mae's Return to Work Policy *required* that it demand from him "a medical release form from the physician or caregiver . . . noting any work restrictions or limitations" before he could return.  ECF No. 106-5 at 39.

An important point bears emphasizing: at any point along the line, Skrynnikov could have avoided what he now claims is Fannie Mae's interference with his DCFMLA rights by sharing with it the second page of the George Washington University Hospital note showing an October 16 return to work date—a document he apparently possessed all along.  But for whatever reason, he did not do so until the discovery process in this litigation, long after he exhausted his DCFMLA leave.  On this record, no reasonable jury could conclude that Fannie Mae interfered with his DCFMLA rights by acting as it did.

Third, just as Skrynnikov cannot show that Fannie Mae violated the DCFMLA by delaying his return and requiring a return-to-work certification, he fares no better attacking Fannie Mae's decision to keep delaying until it sought clarification of his medical certification.  Skrynnikov relies on Sections 1613.5 and 1615.2 of Title 4 of the District of Columbia Municipal Regulations to make this argument, but those regulations do not apply here.  They require that employers give employees at least fifteen days to submit a medical certification if the employee seeks to take medical leave, but they say nothing about the time for employees to provide certifications to return to work.  D.C. Mun. Reg. tit. 4, §§ 1613.5, 1615.2.

Finally, Skrynnikov has not shown that a reasonable jury could conclude that his firing interfered with his exercise of his DCFMLA rights.  It bears noting at the outset that "the DCFMLA does not create an absolute right to reinstatement." *Wash. Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1077 (D.C. 2008).  Skrynnikov argues that Fannie Mae refused to allow him to return to work at the end of his leave period and terminated his employment

10

because of that failure to return.  But by the time Fannie Mae informed Skrynnikov that he should not return to the office, he had already exhausted his DCFMLA leave.  ECF No. 106-6 ¶¶ 52, 54; ECF No. 114-1 ¶ 63.  And the only evidence in the record as to why Fannie Mae terminated him shows that it did so for reasons that had nothing to do with his exercise of DCFMLA rights.  *See* ECF No. 103-1 at 613, 618–19, 622.[3]  Finally, while Fannie Mae *did* charge Skrynnikov with unexcused absences for his failure to show up at work on and after October 26, 2009—days that Reed Group later retroactively approved for an extension of his DCFMLA leave, ECF No. 106-6 ¶ 55; ECF No. 114-1 ¶ 63—there is no evidence that those absences arose from interference with his DCFMLA rights or played a role in his firing.

### IV.    Conclusion

For all these reasons, Skrynnikov's motion for summary judgment, ECF No. 103, will be denied, and Fannie Mae's motion for summary judgment, ECF No. 106, will be granted.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: October 27, 2021

---

[3] Skrynnikov no longer alleges that his termination was retaliatory under the False Claims Act. *See* Stipulation of Partial Dismissal, ECF No. 97.